Michael Ryan Jones
JONES INTELLECTUAL PROPERTY
44 Court St #1217
Brooklyn, NY 11201
Telephone: (718) 500-0115

*Attorney for Plaintiff Tara Mapes*

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TARA MAPES, d/b/a TARA MAPES PHOTOGRAPHY,<br><br>Plaintiff,<br><br>v.<br><br>ALIBABA GROUP HOLDING LIMITED; ALIBABA GROUP (U.S.) INC.; ALIBABA.COM US E-COMMERCE CORP.; ALIBABA.COM SINGAPORE E-COMMERCE PRIVATE LIMITED; ALIEXPRESS E-COMMERCE ONE PTE. LTD.; ALIEXPRESS INTERNATIONAL (UNITED STATES) CORPORATION; and DOES 1-10,<br><br>Defendants. | Case No.: ________________<br><br>**COMPLAINT**<br>JURY TRIAL DEMANDED |

## COMPLAINT

1. Plaintiff Tara Mapes, doing business as Tara Mapes Photography ("Plaintiff," "Mapes," or "Ms. Mapes"), by and through undersigned counsel, alleges as follows against Defendants Alibaba Group Holding Limited; Alibaba Group (U.S.) Inc.; Alibaba.com US E-Commerce Corp.; Alibaba.com Singapore E-Commerce Private Limited; AliExpress E-Commerce

One Pte. Ltd.; AliExpress International (United States) Corporation; and Does 1-10 (collectively, "Defendants," "Alibaba," or "Alibaba/AliExpress").

## NATURE OF THE ACTION

2. This is a copyright infringement action arising from Alibaba/AliExpress's repeated, unauthorized use, display, reproduction, distribution, hosting, promotion, advertising, retargeting, recommendation, email-marketing, and continued post-notice use of Ms. Mapes' registered photographs through Alibaba/AliExpress marketplace listings, product pages, sponsored advertisements, product feeds, recommendation placements, email advertisements, and related platform channels.

3. This action is not limited to isolated seller conduct or to the manufacture or sale of physical dresses. The claims concern Alibaba/AliExpress's platform-level conduct, including the display and hosting of accused images on marketplace product pages; use of those images in advertising and promotional channels; recommendation and email-marketing uses; platform response and notice-handling conduct; and continued availability or recurrence of the same image families after repeated notice.

4. Ms. Mapes has identified at least 116 individual registered photographs infringed by Alibaba/AliExpress. Those photographs are identified in Schedule A to this Complaint by work/photo-set title, registration number, and image identifier. Schedule A is incorporated by reference as if fully set forth herein.

5. For qualifying group registrations of photographs, the Copyright Office's regulations provide that a group registration covers each work in the group and that each work is registered as a separate work. Ms. Mapes therefore pleads the individual photographs identified in Schedule A as the infringed works, not merely the number of registration certificates.

6. The use of a single registration certificate and registration number for multiple photographs does not combine those photographs into one copyrighted work. The photographs at issue were registered through the Copyright Office's group-registration procedures, under which the registration covers each photograph and each photograph is registered as a separate work; the registered group itself is not a compilation or collective work.

7. Plaintiff's allegation that at least 116 individual registered photographs were infringed is not derived from the number of accused listings, advertisements, screenshots, sellers, or infringement instances. It reflects at least 116 separately registered photographic works

presently matched to accused Alibaba/AliExpress uses, notwithstanding that those works are contained within twelve registration certificates.

8. Alibaba/AliExpress received repeated notices identifying the copyrighted photographs, accused product listings, product IDs, seller/store information, screenshots, IPP records, task numbers, case numbers, ad-click URLs, advertising placements, and follow-up documentation of continued or recurring uses. Despite that notice, Alibaba/AliExpress allowed the same image families to continue appearing through marketplace listings, relistings, ads, product feeds, recommendations, email-ad placements, and related platform channels.

**PARTIES**

9. Plaintiff Tara Mapes is an individual and professional photographer and visual artist who creates, publishes, licenses, and commercially exploits original photographic works and related visual content under the Tara Mapes Photography name.

10. Plaintiff is the sole author and copyright owner of the copyrighted photographic works at issue in this action, including the individual registered photographs identified in Schedule A.

11. Plaintiff's photographs are distributed and displayed through Plaintiff's professional website and other authorized channels and are protected under the Copyright Act, 17 U.S.C. § 101 et seq. Plaintiff's photographs are customarily published and licensed with identifying authorship, copyright ownership, source attribution, and/or other copyright-management information.

12. Defendant Alibaba Group Holding Limited is a Cayman Islands holding company. Upon information and belief, Alibaba Group Holding Limited controls, owns, directs, and/or benefits from the Alibaba and AliExpress businesses, platforms, subsidiaries, advertising systems, marketplace operations, and intellectual-property enforcement systems relevant to this action.

13. Defendant Alibaba Group (U.S.) Inc. is, upon information and belief, a United States Alibaba entity with operations, offices, personnel, and/or business contacts in New York, including at or associated with 860 Washington Street, New York, New York 10014-1308.

14. Defendant Alibaba.com US E-Commerce Corp. is, upon information and belief, a United States Alibaba entity, formed under the laws of Delaware and/or registered to do business in the United States and New York, with principal, office, mailing, or business address information

associated with New York, including 156 West 56th Street, 3rd Floor, New York, New York 10019.

15. Defendant Alibaba.com Singapore E-Commerce Private Limited is a Singapore entity. Upon information and belief, it is identified in Alibaba/AliExpress terms, platform documents, notices, and/or legal-notice materials as a service provider, platform contracting entity, marketplace operator, or responsible entity for Alibaba.com and/or AliExpress platform services.

16. Defendant AliExpress E-Commerce One Pte. Ltd. is, upon information and belief, a Singapore entity identified in AliExpress terms, platform documents, notices, and/or legal-notice materials as a legal-notice, contracting, operating, or responsible entity for AliExpress platform services.

17. Defendant AliExpress International (United States) Corporation is, upon information and belief, a Delaware corporation identified in AliExpress platform materials as a service provider for United States sellers on the AliExpress platform and involved in U.S.-facing AliExpress seller, marketplace, payment, account, and/or platform services.

18. "AliExpress" and "AliExpress.com" are trade names, brands, and/or platform designations used in connection with the AliExpress e-commerce platform and are not, upon information and belief, separate juridical entities. Plaintiff therefore names the corporate entities identified herein that own, operate, contract for, support, and/or provide the relevant AliExpress platform services.

19. Defendants Does 1-10 are presently unknown Alibaba/AliExpress-related entities, affiliates, subsidiaries, operating companies, advertiser-account holders, product-feed operators, ad-system operators, image-hosting entities, recommendation-system operators, email-marketing entities, or other persons or entities responsible for the conduct alleged herein. Plaintiff will amend this Complaint when their identities are learned.

20. Upon information and belief, Defendants operated as an integrated enterprise, agency relationship, alter ego, joint venture, common enterprise, and/or coordinated platform operation with respect to the conduct alleged herein, including marketplace operation, seller onboarding, product listing display, product feeds, advertising campaigns, retargeting, recommendation systems, email marketing, IPP complaint handling, seller discipline, and repeat-infringer enforcement.

21. Upon information and belief, Defendants share common ownership, control, infrastructure, business systems, branding, marketplace policies, intellectual-property enforcement policies, advertising systems, product-feed systems, user data, seller-account systems, complaint-handling systems, and revenue interests relevant to the conduct alleged herein.

22. Defendants are in the best position to know which Alibaba/AliExpress entity controlled, contracted for, approved, hosted, served, transmitted, advertised, recommended, monetized, processed, or responded to each accused listing, product feed, advertisement, recommendation placement, email placement, IPP complaint, takedown decision, seller account, or image asset. Plaintiff pleads the Alibaba/AliExpress entities collectively at this stage because Defendants operate through overlapping platform, advertising, seller, product-feed, legal-notice, and IPP systems, and because the public-facing materials and Alibaba/AliExpress's own communications do not consistently identify the responsible backend entity.

## JURISDICTION AND VENUE

23. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Copyright Act, 17 U.S.C. § 101 et seq., and the Digital Millennium Copyright Act, including 17 U.S.C. §§ 1202 and 1203.

24. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action also arises under the Lanham Act, 15 U.S.C. § 1125(a).

25. This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to Plaintiff's federal claims that they form part of the same case or controversy.

26. This Court has personal jurisdiction over the United States Alibaba/AliExpress entities because, upon information and belief, they reside in, are registered to do business in, maintain offices in, conduct business in, transact business in, solicit business in, support platform operations in, direct advertising or marketplace activity into, and/or derive revenue from New York and this District. To the extent any United States Alibaba/AliExpress entity does not reside in this District, it nevertheless purposefully conducts business in this District and Plaintiff's claims arise from or relate to that business, including U.S.-facing marketplace, advertising, product-feed, seller, recommendation, and e-commerce conduct.

27. This Court has personal jurisdiction over the United States Alibaba/AliExpress Defendants because, upon information and belief, they purposefully conduct, transact, and/or

support Alibaba/AliExpress business in New York, and Plaintiff's claims arise from or relate to that conduct.

28. This Court has specific personal jurisdiction over Alibaba Group Holding Limited and the foreign Alibaba/AliExpress Defendants at least because, upon information and belief, each such Defendant purposefully directed marketplace, advertising, promotional, seller, and/or e-commerce activity toward New York, and Plaintiff's claims arise from or relate to that forum-directed conduct.

29. Upon information and belief, Alibaba/AliExpress maintained or used offices, personnel, agents, subsidiaries, affiliates, or business infrastructure in New York, including the Alibaba Group New York office at or associated with 860 Washington Street, New York, New York 10014-1308, and United States service or process infrastructure associated with Corporation Service Company at 19 West 44th Street, Suite 200, New York, New York 10036.

30. Upon information and belief, Alibaba.com US E-Commerce Corp. is registered or authorized to do business in New York, maintains a principal executive office and/or process address at or associated with C/o Vistra, 156 West 56th Street, 3rd Floor, New York, New York 10019, and has designated the New York Secretary of State as agent for service of process, with process to be mailed to that New York address.

31. Upon information and belief, to the extent New York-directed marketplace, advertising, payment, seller, or platform activities were conducted by one Alibaba/AliExpress entity on behalf of another Defendant, those activities were undertaken for that Defendant's benefit, with its knowledge and consent, and subject to its control.

32. Upon information and belief, Defendants operated or supported U.S.-facing Alibaba/AliExpress websites, including AliExpress.us and/or AliExpress.com pages displayed in English, showing U.S. dollar pricing, U.S. shipping options, and shipping to U.S. locations, including New York users and users elsewhere in the United States.

33. Upon information and belief, Alibaba/AliExpress maintains and promotes U.S.-facing business operations tied to New York, including Alibaba.com USA materials identifying New York, New York as a United States office location and Alibaba.com materials promoting a New York Pavilion directed to New York small and medium-sized businesses seeking access to Alibaba.com’s global marketplace, promotional opportunities, buyer network, and platform services.

34. Defendants' contacts with this District give rise to and relate to Plaintiff's claims because the accused photographs were displayed, promoted, advertised, recommended, distributed, and/or monetized through Alibaba/AliExpress commercial systems directed to or available for transactions with New York consumers.

35. Upon information and belief, Defendants operate or support interactive Alibaba/AliExpress marketplace systems through which New York consumers can search for products, view listings and advertisements, submit payment and shipping information, purchase products, and arrange delivery to New York addresses.

36. Personal jurisdiction is proper under CPLR § 302(a)(1) because Defendants, directly and/or through their agents, purposefully transacted business in New York and/or contracted to supply goods or services in New York, and Plaintiff's claims arise from or relate to that business.

37. Plaintiff's claims arise from or relate to Defendants' New York-directed commercial activity because the accused photographs were used in marketplace listings, advertisements, recommendations, promotional communications, and related commercial systems through which Defendants transact or solicit business in New York.

38. The exercise of personal jurisdiction over Defendants is consistent with due process because Defendants purposefully availed themselves of the privilege of conducting commercial activity in New York and could reasonably anticipate being haled into court in New York for claims arising from or relating to that activity.

39. Upon information and belief, to the extent any foreign Defendant is not subject to personal jurisdiction in any State's courts of general jurisdiction, personal jurisdiction exists over that Defendant pursuant to Federal Rule of Civil Procedure 4(k)(2) with respect to Plaintiff's federal copyright, DMCA, and Lanham Act claims. Each such Defendant purposefully directed commercial activity toward the United States, Plaintiff's federal claims arise from or relate to that activity, and the exercise of jurisdiction is consistent with the Constitution and laws of the United States.

40. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District, including Defendants' New York-directed business, advertising, platform, and

marketplace conduct and the display, targeting, distribution, promotion, and monetization of accused uses of Plaintiff's photographs in this District.

41. Venue is proper pursuant to 28 U.S.C. § 1391(c)(2) as to Defendants subject to personal jurisdiction in this District with respect to this action, and pursuant to 28 U.S.C. § 1391(c)(3) as to Defendants not resident in the United States.

42. Venue is also proper pursuant to 28 U.S.C. § 1400(a) because Defendants reside or may be found in this District for purposes of copyright venue and committed acts of copyright infringement in this District by reproducing, distributing, publicly displaying, hosting, serving, advertising, recommending, promoting, and monetizing Plaintiff's copyrighted works through websites, marketplace pages, advertisements, and related platform channels directed to or used by consumers in this District.

## FACTUAL ALLEGATIONS

43. Plaintiff owns valid, subsisting copyright registrations for the photographic works identified in Schedule A. Each registration remains in full force and effect.

44. Plaintiff is the sole author and owner of the copyrights in the registered photographic works identified in Schedule A, including the individual photographs identified therein. Plaintiff owns all right, title, and interest in and to those copyrights, including the exclusive rights under 17 U.S.C. § 106 to reproduce, prepare derivative works based upon, distribute, publicly display, license, and otherwise exploit the works.

45. Plaintiff obtained copyright registrations from the United States Copyright Office covering the photographic works identified in Schedule A. The registrations identified in Schedule A are valid, subsisting, and in full force and effect.

46. The registrations identified in Schedule A satisfy the registration requirement for this action under 17 U.S.C. § 411. For qualifying group registrations of photographs, the registration covers each photograph in the group and each photograph is registered as a separate work.

47. Upon information and belief, additional individual registered photographs within one or more of the group registrations identified in Schedule A have also been infringed through Alibaba/AliExpress marketplace, advertising, recommendation, email, promotional, or related platform uses. Plaintiff has identified 116 individual registered photographs to date and reserves

the right to amend or supplement the identification of infringed works as additional infringements are confirmed through further investigation and discovery.

48. Schedule A identifies at least 116 unique registered photographs presently known to have been infringed by Alibaba/AliExpress. Plaintiff pleads the individual photographs identified in Schedule A as the infringed works for purposes of ownership, infringement, damages, and statutory-damages analysis.

49. The photographs identified in Schedule A are not merely screenshots, listings, advertisements, or display instances. They are individual registered photographs created and owned by Plaintiff.

50. The registrations identified in Schedule A are group registrations of photographs qualifying under the Copyright Office's group-registration procedures. A group registration is an administrative mechanism permitting multiple photographs to be registered through a single application and registration certificate; it does not merge the photographs into a single copyrighted work.

51. Each photograph identified in Schedule A was separately created, separately identified within the applicable group registration, and is covered by that registration as an individual registered work. The group as a whole was not registered as a compilation or collective work, and Plaintiff does not allege copyright in the selection, coordination, or arrangement of the photographs as a collective whole.

52. The fact that multiple photographs identified in Schedule A share the same registration number does not mean that those photographs constitute a single work. Plaintiff alleges infringement of the individual registered photographs themselves.

53. The infringement by Defendants alleged herein commenced after the effective registration date applicable to each photograph identified in Schedule A. The infringements alleged in this action therefore concern photographs that had already been registered when Defendants began the infringing conduct alleged against them.

54. Defendants used Plaintiff’s photographs without license, permission, or consent.

55. Defendants’ unauthorized uses included, without limitation, marketplace product-page uses, seller listing uses, product image gallery uses, Alibaba supplier-page uses, sponsored advertisements, retargeting advertisements, recommendation placements, email advertisements, promotional content, product feeds, ad-click flows, and related platform contexts.

56. The accused uses promoted competing children's dresses, gowns, costumes, and related apparel offered for sale through Alibaba/AliExpress marketplace, product-page, seller, advertising, and promotional systems.

57. Upon information and belief, Defendants reproduced, stored, hosted, transmitted, served, publicly displayed, distributed, used, and/or monetized copies of Plaintiff's photographs through Defendants' marketplace, advertising, recommendation, email-marketing, product-feed, seller, and platform systems.

58. Upon information and belief, Defendants' systems ingested, stored, indexed, cached, selected, transmitted, distributed, displayed, advertised, recommended, and/or monetized images from seller-uploaded product listings, product catalogs, product feeds, ad creatives, recommendation feeds, email modules, and related data systems.

59. Upon information and belief, Defendants have the ability to process links, render listings invisible, remove or disable access to listings, suppress product feeds, block or remove ad creatives, discipline sellers, restrict seller accounts, terminate repeat infringers, and use image-matching, hashing, filtering, or other available tools to prevent or reduce repeated display and redistribution of infringing photographs.

60. Upon information and belief, Defendants also stored, cached, indexed, or otherwise retained copies of Plaintiff's photographs in Alibaba/AliExpress-controlled image, product, search, recommendation, or advertising systems. In some instances, Plaintiff documented accused images continuing to appear through removed-link flows, image-search flows, product-recommendation flows, or "similar product" displays after the original listing was allegedly processed, removed, or rendered invisible. Those continued displays show that the accused images remained stored, surfaced, displayed, recommended, and/or monetized through Alibaba/AliExpress-controlled systems after the underlying listing was allegedly addressed.

61. Plaintiff documented instances in which, after listings or marketplace pages appeared to be removed or disabled, Plaintiff's photographs continued to appear in advertisements, email-ad placements, ad-click flows, or image files hosted or served through Alibaba/AliExpress-controlled or Alibaba/AliExpress-associated media infrastructure. In at least one instance, Plaintiff preserved an accused image and related records showing that an image from an AliExpress advertisement continued to load as a stored image after the underlying marketplace content appeared to have been removed or disabled.

62. Plaintiff also preserved instances in which Plaintiff's photographs appeared within Alibaba/AliExpress promotional emails, recommendation displays, advertisements, and other platform-generated or platform-distributed marketing contexts, rather than solely within the underlying seller-created listing.

63. These uses show that Plaintiff's copyrighted photographs were reproduced, displayed, transmitted, and/or distributed through Defendants' own advertising and promotional systems, rather than solely through underlying seller-created product pages.

64. Attached as Schedule B is a preliminary, representative, and non-exhaustive summary of Plaintiff's documented infringement, notice, and post-notice records. Schedule B is not intended to identify every instance of infringement, every accused listing or advertisement, every seller or store, every product identifier, every notice or platform response, or every instance of post-notice continuation, relisting, recommendation, email promotion, or repeat use. Rather, Schedule B shows representative examples, organized by work/photo set and registration, of Alibaba/AliExpress marketplace listings, product pages, sponsored advertisements, retargeting placements, recommendation placements, email advertisements, IPP records, platform responses, seller/store information, product identifiers, notice history, post-notice continuation, relisting, and repeat-use patterns. Plaintiff reserves the right to supplement Schedule B based on discovery, additional platform records, seller records, advertising records, product-feed records, recommendation and email-marketing records, and further investigation.

65. Schedule B shows that the infringement was not limited to isolated seller listings. The same or related Tara Mapes image families appeared across multiple sellers, stores, product IDs, advertisements, recommendation placements, email placements, product feeds, and Alibaba/AliExpress platform channels, including after repeated notice.

66. The infringed photographs presently identified by Plaintiff are summarized below and listed individually in Schedule A:

| Work / Photo Set | Registration | Unique Photographs Pleaded |
|---|---|---|
| Gingerbread Kids | VA0002459794 | 13 |
| Harper Anna Hot Pink Short Dress | VA0002464858 | 10 |
| Harper Mint Anna Gown | VA0002464855 | 10 |
| Harper Red Dress | VA0002464859 | 9 |
| Harper Spring Anna Gown | VA0002463402 | 12 |
| Ice Cream Dress | VA0002489918 | 1 |
| Iris Bliss Gown | VA0002449231 | 9 |
| Kennyce Pink Maternity Gown Before Ever | VA0002489910 | 10 |
| Libby Jackie O Pink Dress / Libby Before Ever | VA0002488065 | 13 |
| Libby Rapunzel | VA0002464852 | 12 |
| Libby Red Carriage House Short Dress / Libby Short Red Dress | VA0002464857 | 7 |
| Stella Stella Maris Red / Stella Red Nutcracker | VA0002482167 | 10 |

Summary Chart of Schedule A

**Alibaba/AliExpress Advertising, Product-Feed, and Recommendation Conduct**

67. Upon information and belief, the infringement alleged herein was not limited to static product listings uploaded by individual sellers. Ms. Mapes' photographs were also displayed and promoted through Alibaba/AliExpress-sponsored advertisements, retargeting placements, product-recommendation placements, email advertisements, product-feed placements, and off-site advertising units appearing on U.S.-facing publisher pages and email platforms.

68. Upon information and belief, those advertisements and promotional placements were part of Alibaba/AliExpress's advertising and product-promotion ecosystem and were used to drive consumer traffic to AliExpress and Alibaba product pages. The public-facing advertisements often identified AliExpress, Alibaba, or AliExpress-linked product pages as the commercial

destination, while the backend advertiser account, campaign ID, creative ID, seller account, and product-feed source were not visible to Ms. Mapes.

69. The public-facing advertisements frequently identified AliExpress, Alibaba, or AliExpress-linked product pages as the commercial destination of the advertisement, rather than identifying the individual marketplace seller as the advertiser.

70. Upon information and belief, the backend advertiser account, campaign ID, creative ID, product-feed source, and ad-serving records are maintained or controlled by Defendants and are not publicly visible to Plaintiff.

71. Upon information and belief, Defendants, not merely individual sellers, controlled, contracted for, funded, supplied, approved, transmitted, or materially participated in the advertising, retargeting, recommendation, product-feed, and email-marketing systems through which Plaintiff's photographs were displayed and promoted.

72. Upon information and belief, Alibaba/AliExpress contracted with, integrated with, or otherwise used third-party advertising and retargeting providers, including platforms such as Taboola, Criteo, RTB House, Yahoo, and other publisher or ad-delivery channels, to display advertising creatives incorporating Ms. Mapes' copyrighted photographs.

73. Upon information and belief, Alibaba/AliExpress exercised control over the advertising, recommendation, email-marketing, product-feed, and platform systems through which the accused photographs were displayed, promoted, recommended, transmitted, or monetized. Alibaba/AliExpress's own responses and records show that it could process links, render listings invisible, route complaints through IPP, assign task IDs and tracking numbers, communicate with ad channels, and take steps concerning "channel commodity advertising."

74. Alibaba/AliExpress's own communications confirm that it had the ability to act at the advertising-channel level. In connection with prior notices concerning Ms. Mapes' photographs, Alibaba/AIDC represented that material had been processed or rendered invisible, attributed continued display to cache or browser issues, and, in at least one communication, apologized for the "advertisement of infringing goods" and stated that relevant "channel commodity advertising" had been stopped. Those communications show that Defendants exercised practical control beyond individual seller product pages, including the ability to take action concerning advertising channels.

75. Alibaba/AliExpress also directly sends promotional and marketing emails to consumers advertising particular products and listings available through its platforms. Plaintiff has received and preserved Alibaba/AliExpress promotional emails that feature and display products using Plaintiff's copyrighted photographs.

76. Those promotional emails are Alibaba/AliExpress marketing communications, rather than communications independently sent to consumers by the third-party sellers, and are designed to direct recipients to particular products and listings available through Alibaba/AliExpress.

77. In those communications, Alibaba/AliExpress's own marketing systems reproduce and/or display Plaintiff's copyrighted photographs, identify or promote particular products, and provide links or other mechanisms directing recipients to the associated Alibaba/AliExpress listings.

78. Alibaba/AliExpress continued to engage in such promotional activity notwithstanding its receipt of repeated and specific notice that Plaintiff's copyrighted photographs were being used without authorization through its platforms.

79. Alibaba/AliExpress therefore cannot avoid liability by asserting that individual sellers independently posted product listings. The claims asserted here concern both seller listings and Alibaba/AliExpress's own platform-level conduct, including hosting, displaying, promoting, advertising, retargeting, recommending, emailing, storing, indexing, and monetizing Ms. Mapes' copyrighted photographs after repeated notice.

**Representative Work-Specific Allegations**

*Gingerbread Kids*

80. Plaintiff owns registered photographs in the Gingerbread Kids photo set, including individual photographs identified in Schedule A under registration VA0002459794.

81. Representative evidence concerning Gingerbread Kids includes: 95 unique file-level evidence images/screenshots outside the registration/original-photo folders; core notice/evidence period July 7, 2025 through November 3, 2025; and 17 registered photographs in the registration, of which 13 are presently alleged to have been infringed and are identified in Schedule A.

82. Representative sellers, stores, or platform identities associated with the accused uses include: Oh My Little Princess Store(Trader); Little Princess & Huggy Bunny Store(Trader); repeated AliExpress/Alibaba sponsored-ad and Pinterest placements.

83. Representative product IDs, item IDs, ad channels, or platform channels associated with the accused uses include: Product/listing identifiers include 3256805921229019, 3256805976266452, 1005006162581204, and 1005006107543771; Taboola, Criteo, Google/search results, Pinterest, and AliExpress marketplace pages.

84. Representative notice, response, recurrence, or post-notice evidence includes: IPP rejection/notice-processing evidence began July 7, 2025; DMCA/ad notice evidence began July 16, 2025; later correspondence stated another version of the ad came back onto the network; screenshots continued after notices.

*Harper Hot Pink Dress*

85. Plaintiff owns registered photographs in the Harper Hot Pink Dress photo set, including individual photographs identified in Schedule A under registration VA0002464858.

86. Representative evidence concerning Harper Hot Pink Dress includes: 79 apparent infringement evidence items; notice/evidence period August 19, 2025 through November 13, 2025; and 14 registered photographs in the registration, of which 10 are presently alleged to have been infringed and are identified in Schedule A.

87. Representative sellers, stores, or platform identities associated with the accused uses include: Lavender Elves Store(Trader); Sofia Girl Dress Boutique Store(Trader); Kids Fashion Territory; repeated AliExpress/Alibaba ad-channel placements.

88. Representative product IDs, item IDs, ad channels, or platform channels associated with the accused uses include: Product IDs 3256808853582135 and 3256809015925227; Taboola, Criteo, RTB House, Yahoo/email, marketplace listings and banner advertisements.

89. Representative notice, response, recurrence, and post-notice records include: August 19, 2025 marketplace/ad notices; Alibaba/AIDC Tracking/taskId #1009406227 stated the link was processed/invisible; later marketplace, Taboola, Criteo, Yahoo, and banner evidence continued.

*Harper Mint Halle Red / Harper Mint Anna Gown / Halle Red Carriage House*

90. Plaintiff owns registered photographs in the Harper Mint Halle Red / Harper Mint Anna Gown / Halle Red Carriage House photo set, including individual photographs identified in Schedule A under registration VA0002464855.

91. Representative evidence concerning Harper Mint Halle Red / Harper Mint Anna Gown / Halle Red Carriage House includes: 241 unique evidence screenshots/images outside original registration images; evidence period August 19, 2025 through January 31, 2026; and 24 registered photographs in the registration, of which 10 are presently alleged to have been infringed and are identified in Schedule A.

92. Representative sellers, stores, or platform identities associated with the accused uses include: Shanhe Store(Trader); YYDSCHI Forever Love Store(Trader); Diana Girls Boutique Dress Store(Trader); repeated AliExpress/Alibaba ad-channel placements.

93. Representative product IDs, item IDs, ad channels, or platform channels associated with the accused uses include: Product 3256809016282761 later appeared/relisted as 3256809777433945 by YYDSCHI; product 3256809778869330 under Diana Girls Boutique; Shanhe product 3256808217465919; Criteo, Taboola, RTB House, Yahoo/Fox5 ads.

94. Representative notice, response, recurrence, and post-notice records include: August 19, 2025 marketplace/ad notices; Alibaba/AIDC Tracking #1009408240 stated material was processed/invisible; ads and marketplace listings and screenshots continued afterward; strong relisting; documented relisting; and third-party branding/watermark evidence.

*Harper Red Dress*

95. Plaintiff owns registered photographs in the Harper Red Dress photo set, including individual photographs identified in Schedule A under registration VA0002464859.

96. Representative evidence concerning Harper Red Dress includes: 185 unique standalone evidence images/screenshots across marketplace and ad folders; evidence period August 19, 2025 through January 25, 2026; and 9 registered photographs in the registration, all 9 of which are presently alleged to have been infringed and are identified in Schedule A.

97. Representative sellers, stores, or platform identities associated with the accused uses include: Mywedding Store(Trader); Little Princess & Huggy Bunny Store(Trader); Katie Dress Store(Trader); Shop5630285 Store(Trader); repeated AliExpress/Alibaba ad-channel placements.

98. Representative product IDs, item IDs, ad channels, or platform channels associated with the accused uses include: Product IDs include 3256805933691362, 3256809058332661, 3256808317013150, 3256809045751262, 3256808082029722, 3256809081647161, 3256809056988360, 3256809674097310, and 3256809970050004; Taboola, Criteo, RTB House, Yahoo/Fox5/WLWT.

99. Representative notice, response, recurrence, and post-notice records include: August 19, 2025 marketplace/ad notices; Alibaba/AIDC Tracking #1009408239 stated the link was processed/invisible; Ms. Mapes disputed resolution; later December 2025 and January 2026 marketplace and advertising uses continued.

*Harper Spring Anna Gown*

100. Plaintiff owns registered photographs in the Harper Spring Anna Gown photo set, including individual photographs identified in Schedule A under registration VA0002463402.

101. Representative evidence concerning Harper Spring Anna Gown includes: 93 unique file-level evidence images/screenshots outside registration/original-photo folders; evidence period July 22, 2025 through June 17, 2026; and 12 registered photographs in the registration, all 12 of which are presently alleged to have been infringed and are identified in Schedule A.

102. Representative sellers, stores, or platform identities associated with the accused uses include: Shoushi Store(Trader); Miracles Match Store(Trader); Baby Boutique Store(Trader); Kiddie Couture Store(Trader); Giggly Bear Store(Trader); Shop5630285 Store(Trader); additional IPP seller codes.

103. Representative product IDs, item IDs, ad channels, or platform channels associated with the accused uses include: Central product ID 3256807711303877; other IDs include 3256809081581866, 3256808166589108, 3256809139171306, 3256810310376606, 3256810310486405, 3256810232149220, 3256810312514109, and 3256811640038501; AliExpress marketplace, landing pages, Criteo-style captures, email and recommendation placements.

104. Representative notice, response, recurrence, and post-notice records include: July 2025 IPP complaints and DMCA notices; AIDC Tracking #1009406127 claimed off-site ads were removed; Ms. Mapes responded that images remained and were loading again; later December 2025 through June 2026 screenshots and records show continued product, landing-page, and recommendation/email use.

*Iris Bliss Gown*

105. Plaintiff owns registered photographs in the Iris Bliss Gown photo set, including individual photographs identified in Schedule A under registration VA0002449231.

106. Representative evidence concerning Iris Bliss Gown includes: 113 unique file-level evidence images/screenshots outside originals; core evidence period March 3, 2025 through May 25, 2026; and 14 registered photographs in the registration, of which 9 are presently alleged to have been infringed and are identified in Schedule A.

107. Representative sellers, stores, or platform identities associated with the accused uses include: Longyan Yiciyuan Trading Co., Ltd.; Anhui Bidier Garment Manufacturing Co., Ltd.; Yiwu Sili Import And Export Co., Ltd.; AliExpress/Alibaba ad-channel advertiser/seller not visible in ad screenshots.

108. Representative product IDs, item IDs, ad channels, or platform channels associated with the accused uses include: Alibaba product IDs 1601083046266, 60732868096, and 1600955797852; AliExpress item 3256807799352167 in retargeting/ad URL; Taboola, Criteo, and RTB House ad-channel screenshots and records.

109. Representative notice, response, recurrence, and post-notice records include: IPP case/task records include Case 202503040328030106 / Task 100002610107 and Case 202504292351178667 / Tasks 100003048669 and 100003048668, with counter-notice rejected status; later link-packet evidence states an Alibaba IPP/original-listing image-search flow still loaded the complaint image from Alibaba servers on April 28, 2026 and promoted similar products.

*Ice Cream Dress / TM20222-173*

110. Plaintiff owns registered photographs in the Ice Cream Dress / TM20222-173 photo set, including individual photographs identified in Schedule A under registration VA0002489918.

111. Representative evidence concerning Ice Cream Dress / TM20222-173 includes: 95 unique non-copyright evidence screenshots/images; evidence period February 11, 2026 through June 17, 2026; and one photograph from the applicable group registration is presently alleged to have been infringed and is identified in Schedule A.

112. Representative sellers, stores, or platform identities associated with the accused uses include: Leslie and Judy Store(Trader); Xuzhou Chenfenglai Network Technology Co., Ltd.;

AliExpress/Alibaba ad and recommendation channel; Taboola, Criteo, and RTB House delivery channels.

113. Representative product IDs, item IDs, ad channels, or platform channels associated with the accused uses include: Product ID 3256809865438031; AliExpress marketplace, Yahoo/Yahoo Mail placements, Taboola, Criteo, RTB House, and AliExpress email and recommendation placements.

114. Representative notice, response, recurrence, and post-notice records include: Alibaba was notified February 28, 2026; Taboola received three notices between March 20 and March 30, 2026; Criteo acknowledged disabling the ad on March 23 but later follow-ups stated the image remained active; RTB House was notified March 27; continued uses were documented through June 17, 2026.

*Kennyce Pink / TM20221*

115. Plaintiff owns registered photographs in the Kennyce Pink / TM20221 photo set, including individual photographs identified in Schedule A under registration VA0002489910.

116. Representative evidence concerning Kennyce Pink / TM20221 includes: 13 screenshots display the copyrighted photos in the accused listing; 15 total marketplace listings and screenshots including seller/business identity; evidence period May 16 through May 20, 2026; and 10 photographs from the applicable group registration are presently alleged to have been infringed and are identified in Schedule A.

117. Representative sellers, stores, or platform identities associated with the accused uses include: Elves in the forest Store(Trader); store no. 912021063; Suzhou Industrial Park Xinyun Grass Trading Co., Ltd.

118. Representative product IDs, item IDs, ad channels, or platform channels associated with the accused uses include: AliExpress item/product ID 3256811963951391; marketplace product-page, seller-overlay, business-information, and notice-response records.

119. Representative notice, response, recurrence, and post-notice records include: May 19, 2026 DMCA notice identified registration, image numbers, and accused item URL; Alibaba International responded May 20, 2026 with Task ID 500007202260, Batch ID 202605202330032259, and service no. taskId:1009862012#; link chronology notes removal on May 21, 2026.

*Libby Red / Libby Short Red Dress*

120. Plaintiff owns registered photographs in the Libby Red / Libby Short Red Dress photo set, including individual photographs identified in Schedule A under registration VA0002464857.

121. Representative evidence concerning Libby Red / Libby Short Red Dress includes: At least 205 unique screenshot image files outside original registration/picture set, plus one marketplace PDF and one MP4 screen recording; evidence period August 20, 2025 through January 27, 2026; and 7 registered photographs in the registration, all 7 of which are presently alleged to have been infringed and are identified in Schedule A.

122. Representative sellers, stores, or platform identities associated with the accused uses include: Nunoah Girl Dress Store(Trader); Lavender Elves Store(Trader); Shoushi Store(Trader); Alibaba/AliExpress ad-channel advertiser through Taboola, Criteo, and RTB House.

123. Representative product IDs, item IDs, ad channels, or platform channels associated with the accused uses include: Central product ID 3256807926709064 / object-product reference 1005008113023816; additional IDs 3256804529824709 and 3256809358431245; Taboola, Criteo, RTB House, Yahoo/email, Fox5, publisher ads, Google/image/search, and marketplace listings and screenshots.

124. Representative notice, response, recurrence, and post-notice records include: August 19, 2025 marketplace/ad notices; Alibaba/AIDC responded with processed/invisible and cache explanations; Tara supplied fresh screenshots; September 25, 2025 response apologized for the advertisement of infringing goods and stated channel commodity advertising was stopped; evidence continued through January 2026.

*Libby Jackie O Pink Dress / Libby Before Ever*

125. Plaintiff owns registered photographs in the Libby Jackie O Pink Dress / Libby Before Ever photo set, including individual photographs identified in Schedule A under registration VA0002488065.

126. Representative evidence concerning Libby Jackie O Pink Dress / Libby Before Ever includes: 137 unique file-level evidence images/screenshots outside originals; one MP4 ad capture present but not counted in image total; evidence period January 29, 2026 through June

24, 2026; and 14 registered photographs in the registration, of which 13 are presently alleged to have been infringed and are identified in Schedule A.

127. Representative sellers, stores, or platform identities associated with the accused uses include: Lucky Girls Boutiques Store(Trader); Gowns Customized Store(Trader); Amy Girl Dress Store(Trader); Shandong Yazhe E-Business Co., Ltd. / Yazhe Bridal.

128. Representative product IDs, item IDs, ad channels, or platform channels associated with the accused uses include: Product/listing IDs include 3256809589312851, 3256809603532546, 3256804591078092, 3256811644126061, and Alibaba product 1601664524926; Taboola, Criteo, RTB House, Yahoo/email/news, Fox5DC, Cincinnati.com, Alibaba supplier pages, and promotional emails.

129. Representative notice, response, recurrence, and post-notice records include: Alibaba was notified February 27, 2026; Taboola was notified March 17; Criteo was notified March 18 and acknowledged disabling or blocking ads; screenshots and follow-up emails show continued display on March 20, March 24, March 25, March 31, April 15, April 17, and later marketplace/email captures through June 24, 2026.

*Libby Rapunzel*

130. Plaintiff owns registered photographs in the Libby Rapunzel photo set, including individual photographs identified in Schedule A under registration VA0002464852.

131. Representative evidence concerning Libby Rapunzel includes: 100 unique screenshot-level evidence files outside registration/original-photo folders; evidence period August 14, 2025 through October 14, 2025, with notice evidence through November 5, 2025; and 13 registered photographs in the registration, of which 12 are presently alleged to have been infringed and are identified in Schedule A.

132. Representative sellers, stores, or platform identities associated with the accused uses include: Sofia Girl Dress Boutique Store(Trader); unknown seller behind item 3256804529939791; AliExpress/Alibaba ad advertiser through Taboola and Criteo.

133. Representative product IDs, item IDs, ad channels, or platform channels associated with the accused uses include: Product ID 3256807799352167; additional item 3256804529939791; possible item 3256808217465919 in link list; Taboola and Criteo ad placements on Fox5, Yahoo, ABC News, email, and other publisher pages.

134. Representative notice, response, recurrence, and post-notice records include: August 19, 2025 marketplace/ad notices; Alibaba/AIDC Tracking #1009408237 stated a link was processed/invisible; Ms. Mapes responded that the ad image remained visible; Taboola/Criteo screenshots continued through October 14, with separate November 5 notices accusing repeat infringement.

*Stella Stella Maris Red / Stella Red Nutcracker*

135. Plaintiff owns registered photographs in the Stella Stella Maris Red / Stella Red Nutcracker photo set, including individual photographs identified in Schedule A under registration VA0002482167.

136. Representative evidence concerning Stella Stella Maris Red / Stella Red Nutcracker includes: 273 unique file-level screenshot/image evidence instances from ads and marketplace folders; evidence period November 21, 2025 through June 23, 2026; and 10 registered photographs in the registration, all 10 of which are presently alleged to have been infringed and are identified in Schedule A.

137. Representative sellers, stores, or platform identities associated with the accused uses include: Oh My Little Princess Store(Trader); Little Princess & Huggy Bunny Store(Trader); AliExpress/Alibaba sponsored-ad and email channel; AliExpress verified merchant/Pinterest presence.

138. Representative product IDs, item IDs, ad channels, or platform channels associated with the accused uses include: Oh My Little Princess item 3256807933860581 / product ref 1005008120175333 / store ID 1101427112 if visible; Little Princess & Huggy Bunny item 3256807491298938; Taboola, Criteo/Yahoo Mail, Google sponsored products, Pinterest, and AliExpress email marketing.

139. Representative notice, response, recurrence, and post-notice records include: Taboola DMCA notice sent December 6, 2025; Alibaba marketplace-and-ads notice sent January 27, 2026; screenshots continued after both notices, including marketplace captures through May 27, 2026 and an AliExpress marketing email on June 23, 2026.

**Plaintiff's Investigative Purchases**

140. To investigate the marketplace infringement, Plaintiff purchased representative dresses offered through accused Alibaba/AliExpress listings. Those purchases confirmed that the

accused listings were active commercial listings offering physical products for sale using Plaintiff's copyrighted photographs.

141. The products Plaintiff received were unauthorized knockoff or counterfeit-style reproductions of handmade couture garments depicted in Plaintiff's copyrighted photographs. The accused listings used Plaintiff's photographs, including photographs of minor children wearing the original couture designs, to market and sell unauthorized versions of the garments through Alibaba/AliExpress marketplace channels.

142. Plaintiff incurred these investigative purchases to document the nature and scope of the infringement, confirm that the accused listings were active commercial offers rather than abandoned webpages, and create and preserve a record of Defendants' marketplace conduct.

**Alibaba/AliExpress Had Specific Notice**

143. Ms. Mapes repeatedly notified Alibaba/AliExpress of specific infringing uses. Those notices and complaint materials identified particular copyrighted photographs, product/listing URLs, product IDs, screenshots, seller/store information, IPP records, advertising placements, ad-click URLs, and follow-up documentation showing continued or recurring uses.

144. Alibaba/AliExpress responded through multiple channels, including Alibaba/AIDC emails, IPP records, tracking numbers, task IDs, case numbers, batch numbers, and platform-status communications. Those records confirm that Alibaba/AliExpress had actual notice of specific accused materials and specific platform locations.

145. Plaintiff's preliminary audit reflects at least twenty separate Alibaba/AliExpress complaint or tracking matters, in addition to separate IPP complaint records, task numbers, and a broader set of notice/response-type documents and screenshots. That count is conservative and does not inflate duplicative screenshots, responses, ad-network communications, or escalation materials into separate notice counts.

146. Representative notice and platform-response examples include Alibaba/AIDC Tracking/taskId #1009406227 for Harper Hot Pink; Alibaba/AIDC Tracking #1009408240 for Harper Mint; Alibaba/AIDC Tracking #1009408239 for Harper Red; AIDC Tracking #1009406127 for Harper Spring; IPP case/task records for Iris Bliss; Task ID 500007202260 and Batch ID 202605202330032259 for Kennyce Pink; multiple August 2025 notices for Libby Red and Libby Rapunzel; and January 2026 notices and later documented marketplace, advertising, and email uses for Stella Stella Maris Red / Stella Red Nutcracker.

147. Defendants received enough information to identify the copyrighted works, registrations, product listings, sellers, product IDs, advertising uses, recommendation/email uses, prior notices, and repeated post-notice infringement.

148. Alibaba/AliExpress maintained and directed rights holders to intellectual-property complaint procedures, including the Alibaba Intellectual Property Protection Platform ("IPP"), online notice-and-takedown forms, and email notice channels. Alibaba's published IPP materials state that the IPP covers Alibaba.com and AliExpress.com and is a web-based intellectual-property infringement claims-processing system through which rights holders may submit takedown notices concerning suspected infringing product listings.

149. Alibaba/AliExpress also provided email-based notice channels for intellectual-property complaints, including ipr@alibaba-inc.com, aidc-ipr@alibaba-inc.com, and/or ippnotice@aidcgroup.net. Plaintiff and her counsel used Alibaba/AliExpress's stated and actual notice channels, including IPP submissions, online notice forms, email notices, marketplace/product-link notices, advertising notices, and follow-up correspondence.

150. Plaintiff's notices identified the copyrighted photographs, copyright registrations, accused Alibaba/AliExpress listings, product IDs, item IDs, seller/store information, screenshots, ad placements, ad-click URLs, IPP records, task numbers, case numbers, and follow-up documentation showing continued or recurring use. Those submissions conformed to, or substantially complied with, Alibaba/AliExpress's stated procedures and provided information sufficient for Alibaba/AliExpress to identify the accused works and accused uses.

151. Alibaba/AliExpress's later requests for duplicative materials, additional certificates, official-website screenshots, identity documents, product links for dynamic advertisements, or resubmissions through different channels did not reflect a lack of notice. They reflected Alibaba/AliExpress's shifting, burdensome, and ineffective enforcement process.

152. Alibaba/AliExpress also maintained or introduced a rights-holder program known as BrandSafe through the Alibaba International IPP Platform. Alibaba/AliExpress described BrandSafe as a program for trusted rights holders designed to strengthen intellectual-property protection using Alibaba International's enforcement tools, including tools intended to streamline notice-and-takedown, collect rights-holder brand knowledge, and use advanced technologies, including artificial intelligence, to target infringing listings and sellers.

153. Alibaba/AliExpress's BrandSafe materials further stated that, after verification by the platform, the platform would proactively provide protection, including efficient proactive automation protection and multidimensional enforcement-related data. Those statements demonstrate that Alibaba/AliExpress possessed or claimed to possess tools and procedures beyond passive receipt of individual product-link complaints.

154. Despite those stated capabilities, Plaintiff was repeatedly forced to submit duplicative materials, respond to procedural objections, provide additional proof, locate new URLs and product IDs, and continue documenting the same image families appearing across marketplace listings, advertisements, recommendation placements, email placements, product feeds, and related platform channels.

155. Plaintiff's notice history included several categories of Alibaba/AliExpress notice and response records. First, Plaintiff submitted IPP or platform-form complaints identifying accused listings, product IDs, and copyrighted works. Second, Plaintiff sent email notices and follow-up correspondence to Alibaba/AIDC-related notice channels. Third, Plaintiff provided advertising-specific documentation, including screenshots, publisher-page contexts, ad-click URLs, and records of retargeting, recommendation, email, and sponsored-ad placements. Fourth, Alibaba/AliExpress responded with tracking numbers, task IDs, case numbers, batch numbers, processed/invisible responses, rejection notices, cache explanations, and requests for additional materials.

156. Those records show that Alibaba/AliExpress knew which works were at issue, which listings or product IDs were accused, which stores or sellers were involved, and which advertising or recommendation channels continued to display the accused photographs.

157. Plaintiff did not merely send generalized complaints. Plaintiff repeatedly provided the information Alibaba/AliExpress requested or needed to process infringement reports, including work identification, registration information, accused URLs or product IDs, screenshots, seller/store information, advertising screenshots and records, and follow-up proof of continued display. Alibaba/AliExpress nevertheless treated recurring infringement as isolated tickets, rejected or delayed complaints based on procedural demands, and continued to request duplicative information after receiving enough information to identify and address the infringement.

158. On July 17, 2026, Plaintiff, through counsel, sent Alibaba/AliExpress a substantive demand letter with exhibits identifying Plaintiff's copyrighted works, accused marketplace and

advertising uses, product and seller information, notice history, representative evidence, preservation demands, claimed statutory exposure, and a settlement demand.

159. On August 3, 2026, Plaintiff, through counsel, sent further correspondence to Alibaba/AliExpress concerning the claims and materials provided with the July 17 demand.

160. By August 10, 2026, counsel for Defendants had become involved in the matter.

161. On August 14, 2026, the parties participated in a settlement conference concerning Plaintiff's claims.

162. At Defendants' request, Plaintiff provided additional materials and limited pre-suit discovery on August 18, 2026 and August 24, 2026.

163. In connection with those exchanges, Plaintiff repeatedly requested that Defendants identify when a substantive response to Plaintiff's claims could be expected.

164. As of the filing of this Complaint, Defendants have not provided a substantive response to Plaintiff's claims or identified a date or range of dates by which such a response will be provided.

165. Schedule B shows that Defendants had information sufficient to identify the accused works, registrations, product listings, sellers/stores, product IDs, advertising channels, notice history, and platform responses. Schedule B also shows representative instances in which the same or related image families continued to appear across listings, advertisements, recommendation placements, email placements, product feeds, and related platform channels after Defendants received notice. Defendants nevertheless continued to route Plaintiff through automated or shifting notice procedures.

166. Defendants' conduct after receipt of those notices was not limited to permitting accused seller listings to remain available. After receiving specific notice concerning Plaintiff's copyrighted works, Defendants' own advertising, recommendation, product-feed, and email-marketing systems continued to display and promote products using those works.

167. In certain instances, Plaintiff documented Alibaba/AliExpress promotional or recommendation activity occurring after Defendants had already received notice concerning the copyrighted work, accused product, seller, and/or substantially identical infringing use.

168. Accordingly, Defendants possessed specific knowledge of infringement involving Plaintiff's identified works while their own commercial systems continued to increase consumer exposure to, recommend, advertise, and direct consumers toward products exploiting those works.

**Alibaba/AliExpress Notice Process was Unduly Difficult and Ineffective**

169. Alibaba/AliExpress made enforcement unnecessarily difficult. Ms. Mapes provided specific notices and supporting documentation, but Alibaba/AliExpress repeatedly imposed extra procedural hurdles, including IPP authentication issues, additional proof demands, official-website screenshot demands, product-link demands for dynamic advertisements, resubmission requirements, seller-response procedures, and inconsistent platform responses.

170. Alibaba/AliExpress rejected, delayed, or redirected notices based on platform-created requirements. It stated that proof of rights could not be processed or did not pass authentication, required Ms. Mapes to edit and resubmit materials, demanded screenshots from her official website, and claimed it could not process certain ad complaints because the advertisements were dynamic or personalized.

171. Alibaba/AliExpress also treated recurring ad-distribution problems as isolated links or cache issues, despite receiving fresh screenshots, new article URLs, Yahoo/email advertisements, and ad-click URLs showing that the same images continued to be distributed through Alibaba/AliExpress advertising channels.

172. After Plaintiff's July 17, 2026 demand letter, Alibaba/AliExpress's automated system rejected related notice-and-takedown submissions for purported insufficient information, despite already having received images of the copyrighted works, side-by-side comparisons, registration information, seller information, product IDs, accused links, screenshots, and detailed notice history.

173. Representative post-demand automated rejection records include the following:

| Reported At | Complaint No. | Task ID | Product ID | Listing |
|---|---|---|---|---|
| 2026-07-20 21:40:02 | 202607202140028934 | 500007668935 | 1005010051752783 | Photography Rainbow Color Women Dresses Layered Ruffle Fashion Tutu Dress For Party Tierred Tulle |
| 2026-07-20 21:40:02 | 202607202140028934 | 500007668936 | 1005008120175333 | 0-12Y Baby Girl Autumn Winter Red Velvet Long Sleeves Princess Ball Gown Dress for Party Eid Causal Christmas C285 |
| 2026-07-20 21:40:02 | 202607202140028934 | 500007668937 | 1005007677613690 | 0-12Y Baby Girl Autumn Winter Red Velvet Princess Ball Gown Dress for Eid Causal Party Holiday Christmas C285 |
| 2026-07-18 00:30:02 | 202607180030014640 | 500007664642 | 1005010051752783 | Photography Rainbow Color Women Dresses Layered Ruffle Fashion Tutu Dress For Party Tierred Tulle |
| 2026-07-18 00:30:02 | 202607180030014640 | 500007664641 | 1005008120175333 | 0-12Y Baby Girl Autumn Winter Red Velvet Long Sleeves Princess Ball Gown Dress for Party Eid Causal Christmas C285 |
| 2026-07-18 00:30:02 | 202607180030014640 | 500007664643 | 1005007677613690 | 0-12Y Baby Girl Autumn Winter Red Velvet Princess Ball Gown Dress for Eid Causal Party Holiday Christmas C285 |

Representative Post-Demand Automated Rejection Records

174. The automated rejection communications requested, among other things, a granted copyright certificate with an image of the copyright works and identification documentation for the copyright owner, even though Plaintiff and counsel had already provided extensive identifying information and documentation sufficient to locate and evaluate the infringement.

175. Plaintiff also preserved IPP portal records showing that Alibaba/AliExpress rejected or failed to process submissions even where Plaintiff had provided screenshots, original images, registration-related information, complaint explanations, and comparison materials. In some instances, Alibaba/AliExpress stated that the submitted work did not match the reported listing, even where Plaintiff's preserved materials showed the same or substantially the same copyrighted image being used in the accused listing or advertisement.

176. These preserved IPP records show that Alibaba/AliExpress's notice process did not fail because Plaintiff provided only vague or generalized complaints. Plaintiff provided detailed information, but Alibaba/AliExpress's system still rejected, delayed, or diverted complaints through procedural or automated responses.

177. Those responses further illustrate Alibaba/AliExpress's shifting and unnecessary procedural barriers, not any actual inability to identify the infringement.

178. Alibaba/AliExpress's responses were largely automated, semi-automated, ticket-based, or procedural. They did not provide a substantive human response addressing the broader pattern of repeat infringement, advertising use, recommendation/email use, product-feed use, post-notice recurrence, repeat sellers, or Alibaba/AliExpress's own platform-level conduct.

179. As of the filing of this Complaint, Defendants' infringement of Plaintiff's registered works is ongoing. Plaintiff continues to identify unauthorized displays, distributions, advertisements, recommendations, promotional uses, and/or other exploitation of Plaintiff's registered photographs through Alibaba/AliExpress marketplace and related platform channels.

**Alibaba/AliExpress Platform Conduct and Advertising Ecosystem**

180. Alibaba/AliExpress has asserted that Alibaba International does not manufacture, sell, possess, distribute, or export products and that product listings are posted by individual sellers independently. That position does not answer the claims asserted here.

181. This matter is not limited to who manufactured or sold the physical dresses. It concerns Alibaba/AliExpress's platform-level display, hosting, promotion, advertising, retargeting, recommendation, email-marketing, and continued post-notice use of Ms. Mapes' registered photographs.

182. Alibaba/AliExpress's seller-independence position does not defeat liability for Alibaba/AliExpress's own platform conduct. Courts have recognized that claims against Alibaba/AliExpress may proceed where the allegations concern Alibaba/AliExpress's promotional emails, targeted marketing, knowledge of repeat infringement, ability to control infringing activity, assistance or promotion of infringing sales, and financial benefit from the challenged activity. See *The Pinkfong Co., Inc. v. Alibaba.com Singapore E-Commerce Pte. Ltd.*, No. 23-cv-10967, ECF No. 46, at 5–10 (S.D.N.Y. Mar. 27, 2025). Plaintiff's claims likewise concern Alibaba/AliExpress's own marketplace, advertising, recommendation, email-marketing, product-

feed, IPP, and post-notice conduct, not merely the independent manufacture or sale of physical goods by third-party sellers.

183. The infringement was not limited to seller product pages. Ms. Mapes' copyrighted photographs were also used in AliExpress/Alibaba-sponsored advertisements, retargeting placements, recommendation placements, email advertisements, and off-site ad units delivered through Taboola, Criteo, RTB House, Yahoo, Fox5, WLWT, and other U.S.-facing publisher contexts.

184. Those ads used Ms. Mapes' photographs to drive traffic to AliExpress product pages and to promote products sold through Alibaba/AliExpress marketplace and seller systems.

185. Upon information and belief, Defendants had the ability to stop the use of Ms. Mapes' images in marketplace listings, advertising channels, product feeds, recommendations, email advertisements, and platform-hosted image contexts, but failed to do so effectively after repeated notice.

186. Since the July 17, 2026 demand letter, Alibaba/AliExpress has continued to display and/or promote accused uses of Plaintiff's Ice Cream Dress, Stella Stella Maris Red / Stella Red Nutcracker, Libby Jackie O Pink Dress / Libby Before Ever, and Harper Spring Anna Gown photographs through marketplace and/or advertising channels. Plaintiff documented those continued uses.

187. Alibaba/AliExpress's prompt action on certain notices, including the Kennyce Pink notice, undercuts any claim that Alibaba/AliExpress lacks the practical ability to identify and remove accused material when sufficient notice is provided. Alibaba/AliExpress's failure to act consistently is not an information problem; it is a continued failure to address known infringement despite repeated notice.

**Alibaba/AliExpress Seller Promotion and Commercial Assistance**

188. Alibaba/AliExpress offers sellers programs and services designed to increase seller visibility, consumer traffic, product exposure, inquiries, and transactions, including advertising services, enhanced product placement, promotional opportunities, keyword-related advertising, seller-support services, and other commercial tools.

189. Upon information and belief, one or more sellers responsible for unauthorized uses of Plaintiff's copyrighted works participated in, purchased, received, and/or benefited from Alibaba/AliExpress advertising, promotional, enhanced-placement, seller-status, traffic-

generation, or other commercial seller services while offering products using Plaintiff's copyrighted works.

190. Upon information and belief, Defendants continued to provide one or more such advertising, promotional, placement, or seller-support services to sellers associated with infringement of Plaintiff's works after Defendants had received notice of infringement involving those works and/or sellers.

191. The precise services provided to each seller, the dates on which those services were provided, seller eligibility and status, advertising purchases, promotional placement, traffic-generation services, and Defendants' revenues from those services are matters within Defendants' possession and control and will be established through discovery.

**Repeat Stores, Product Ids, Relisting, and Whack-A-Mole Enforcement**

192. Plaintiff documented a whack-a-mole enforcement pattern:

- Ms. Mapes identified specific infringing uses;
- Alibaba/AliExpress or an ad partner processed, rejected, or partially addressed a specific link; and
- the same image family later appeared through another product ID, listing page, store, ad placement, product feed, recommendation context, or email ad.

193. Little Princess & Huggy Bunny Store(Trader) appeared in documented Gingerbread Kids, Harper Red, and Stella evidence.

194. Shop5630285 Store(Trader) appeared in documented Harper Red and Harper Spring infringements.

195. YYDSCHI Forever Love Store(Trader) appeared in documented Harper Mint infringement under product 3256809016282761 and later under product 3256809777433945.

196. Product 3256807926709064 appeared repeatedly across documented Libby Red marketplace listings, Taboola, Criteo, RTB House, Yahoo/email advertisements, and publisher advertisements.

197. Lavender Elves Store(Trader) appeared in documented Harper Hot Pink infringements and also repeatedly used the Libby Red photo set under product 3256804529824709.

198. Shoushi Store(Trader) appeared in documented Harper Spring infringements and later used the multiple Libby Red photos product 3256809358431245.

199. Product 3256807711303877 appeared repeatedly in Harper Spring notice, marketplace uses, and advertising uses.

200. Product 3256809865438031 appeared repeatedly across documented Ice Cream Dress marketplace listings, Taboola, Criteo, RTB House, Yahoo, and AliExpress recommendation evidence.

201. Product 3256807926709064 appeared repeatedly across documented Libby Red marketplace, Taboola, Criteo, RTB House, Yahoo/email ad, and publisher-ad evidence.

202. Product 3256807933860581 appeared repeatedly in documented Stella Stella Maris Red marketplace listings and ad evidence.

203. Product 1601664524926 appeared repeatedly in documented Libby Jackie O / Alibaba supplier uses associated with Shandong Yazhe E-Business Co., Ltd. / Yazhe Bridal.

204. Even where backend seller IDs, store IDs, campaign IDs, advertiser IDs, ad-account IDs, image hashes, or product-feed records are not visible publicly, Defendants possess or control those records and can identify the relevant sellers, advertiser accounts, platform systems, image assets, product feeds, recommendation feeds, and ad campaigns through discovery.

**Plaintiff's Name, Brand, and Source-Identifying Reputation**

205. Plaintiff operates commercially under the name Tara Mapes Photography. In the children's couture, fine-art portrait, and styled photography markets, the names Tara Mapes and Tara Mapes Photography identify Plaintiff as the source of a distinctive body of photographic work, including highly styled images of children wearing couture dresses, gowns, costumes, and related garments.

206. Plaintiff has developed goodwill and commercial recognition in the Tara Mapes Photography name through years of creating, publishing, licensing, displaying, and promoting original photographic works. Plaintiff's photographs are not generic product shots. They are styled, authored, and curated photographic works associated with Plaintiff's professional identity, reputation, artistic judgment, styling, editing, and commercial photography services.

207. Plaintiff's photographs are used by designers, clients, customers, and the public to identify Plaintiff and Tara Mapes Photography as the source of the images and the associated photographic services. Plaintiff's name, business name, watermarking, source attribution,

authorship information, visual style, and published image context function together as source-identifying indicia of Plaintiff and her photography business.

208. The accused Alibaba/AliExpress listings, advertisements, recommendation placements, email placements, and promotional uses did not merely copy isolated images. They used Plaintiff's source-identifying photographs and, in some instances, removed, obscured, cropped, replaced, or overlaid Plaintiff's authorship, watermarking, or source-identifying information while presenting the images as Alibaba/AliExpress product images, seller images, sponsored-ad images, or promotional materials.

209. By using Plaintiff's source-identifying photographs to advertise and sell unauthorized dresses, Defendants created a likelihood that consumers, designers, clients, or viewers would mistakenly believe that Plaintiff photographed, approved, sponsored, licensed, endorsed, collaborated with, or was otherwise associated with the accused products, sellers, listings, advertisements, or Alibaba/AliExpress platform uses.

210. The likelihood of confusion was heightened because the accused uses involved the same type of subject matter for which Plaintiff is known: children's couture, styled portraiture, gowns, dresses, costumes, and related visual content. Consumers encountering Plaintiff's photographs in Alibaba/AliExpress listings and advertisements could reasonably believe that Plaintiff had authorized the use, participated in the promotion, photographed the advertised products, or approved the sale of the products shown with her images.

211. Plaintiff has not authorized Defendants, Alibaba/AliExpress sellers, advertisers, merchants, or ad-channel participants to use the Tara Mapes Photography name, Plaintiff's source-identifying photographs, Plaintiff's watermarking, Plaintiff's authorship information, or Plaintiff's professional identity to promote, advertise, recommend, or sell the accused products.

**Copyright Management Information**

212. At all relevant times, Plaintiff conveyed copyright management information ("CMI") in connection with Plaintiff's copyrighted photographic works, including Plaintiff's name as author, copyright ownership information, source attribution, watermarking, and/or other identifying information within the meaning of 17 U.S.C. § 1202(c).

213. Several listing and advertising examples appear to use Ms. Mapes' photographs with altered, obscured, cropped, removed, or replaced attribution, watermarking, or source-identifying information.

214. Representative CMI examples include Harper Mint images appearing with YEGYET, YYDSCHI/Mydschi, or Diana Girls Boutique branding or watermarking; Harper Red images appearing with third-party watermarking or branding; Harper Spring images appearing with ICJAEHAO or LIFETIME overlays or rebranding; Ice Cream Dress evidence involving extraction or cropping; and Libby Red marketplace notices alleging watermark removal and copyright-data modification.

215. Upon information and belief, Defendants intentionally removed or altered Plaintiff's CMI, distributed copies of Plaintiff's photographs with CMI removed or altered, or knowingly enabled or facilitated the distribution of copies of Plaintiff's photographs with CMI removed or altered.

216. Defendants acted with actual knowledge, or at a minimum with reasonable grounds to know, that removal or alteration of Plaintiff's CMI would induce, enable, facilitate, or conceal infringement of Plaintiff's copyrighted works, including because Defendants continued to display, host, distribute, advertise, recommend, email, and monetize Plaintiff's photographs after receiving notice of Plaintiff's ownership and objections to unauthorized use.

217. As of the filing of this Complaint, upon information and belief, Defendants continue to display, distribute, advertise, recommend, and/or otherwise traffic in copies of Plaintiff's registered photographs from which Plaintiff's CMI has been removed or altered without authority.

**DMCA Safe Harbor Allegations**

218. To the extent Defendants contend that they are protected by any safe harbor under 17 U.S.C. § 512, Defendants are not entitled to such protection.

219. Defendants had actual knowledge of specific infringing activity and were aware of facts and circumstances from which infringing activity was apparent, including through repeated notices identifying specific copyrighted photographs, listings, product IDs, stores, IPP records, task numbers, ad placements, and post-notice recurrences.

220. Defendants received a financial benefit directly attributable to the infringing activity and had the right and ability to control the infringing activity, including through control over listings, seller accounts, product feeds, ad creatives, recommendations, email placements, search-result images, seller discipline, and repeat-infringer systems.

221. Defendants failed to adopt and reasonably implement a policy that provides for termination of repeat infringers in appropriate circumstances and failed to effectively prevent repeated uses of the same image families after notice.

222. Defendants' own communications represented that complaints submitted through the IPP system would be recorded and submitted to an automated algorithm for disciplinary action, and that repeat infringing members could be subject to progressive measures, including warnings, account restrictions, and termination. Despite those represented capabilities, the same image families, stores, product IDs, or related seller/ad channels continued to appear after repeated notice.

223. Alibaba/AliExpress's BrandSafe materials further support that Defendants possessed or claimed to possess tools, data, and procedures for proactive infringement detection, rights-holder verification, seller and product review, and targeting infringing listings and sellers. Despite those stated capabilities, the same or related image families, listings, sellers, and platform uses continued to appear after Plaintiff's repeated notices.

224. Defendants therefore cannot rely on a nominal repeat-infringer policy where, as alleged herein, Defendants failed to apply that policy reasonably to known repeat infringement involving Plaintiff's registered photographs.

225. Defendants' responses to notices were incomplete and ineffective because they treated repeat and platform-level infringement as isolated product-link complaints or automated takedown tickets while the same image families continued to appear through marketplace, advertising, recommendation, product-feed, and email-marketing channels.

226. Plaintiff does not allege that Defendants' failure to qualify for a limitation on liability under 17 U.S.C. § 512 independently establishes copyright infringement. Rather, the foregoing facts are alleged because they bear upon whether Defendants satisfy the statutory prerequisites for any limitation on liability they may invoke under § 512.

## COUNT I – DIRECT COPYRIGHT INFRINGEMENT (17 U.S.C. § 501)

227. Plaintiff repeats and realleges paragraphs 1 through 226 as if fully set forth herein.

228. Plaintiff owns valid and subsisting copyrights in the registered photographs identified in Schedule A. Plaintiff obtained United States Copyright Office registrations covering those photographs, and all conditions precedent to bringing this action for infringement of those registered works have been satisfied.

229. Defendants infringed Plaintiff's exclusive rights under 17 U.S.C. § 106 by reproducing, distributing, publicly displaying, hosting, transmitting, serving, advertising, recommending, and/or otherwise using Plaintiff's registered photographs without authorization.

230. Defendants' infringement included the use of Plaintiff's photographs in marketplace listings, product pages, sponsored advertisements, retargeting placements, recommendation placements, email advertisements, promotional modules, product feeds, and related platform contexts.

231. In certain instances, Plaintiff's copyrighted photographs were reproduced and displayed within Alibaba/AliExpress-branded or Alibaba/AliExpress-generated promotional emails, recommendation interfaces, advertisements, and other marketing communications, separate and apart from their appearance on seller-created product pages.

232. Plaintiff did not authorize Defendants to reproduce, display, distribute, advertise with, or otherwise use Plaintiff's copyrighted works in Defendants' own promotional and marketing communications.

233. The specific infringed photographs presently identified are listed in Schedule A. Schedule B shows representative instances of Defendants' unauthorized marketplace, advertising, recommendation, email, product-feed, and post-notice uses of those photographs.

234. The registrations identified in Schedule A include qualifying group registrations of photographs. Although multiple photographs were registered through a single application, registration certificate, and registration number, the registration covers the copyrightable authorship in each photograph included in the group, and each photograph is registered as a separate work. The group registration itself does not convert the individual photographs into parts of a compilation or collective work for purposes of 17 U.S.C. § 504(c).

235. Accordingly, Plaintiff pleads each of the 116 individual photographs identified in Schedule A as a separate copyrighted work infringed by Defendants. Plaintiff's identification of registration numbers is not an allegation that all photographs appearing under the same registration number constitute a single work for purposes of statutory damages.

236. Plaintiff does not seek multiple statutory-damages awards merely because the same photograph was infringed through multiple listings, advertisements, sellers, product IDs, recommendations, emails, or other uses. Rather, Plaintiff seeks the remedies permitted by 17 U.S.C. § 504(c) with respect to each separate registered photograph infringed, with the repeated

uses of a particular photograph relevant to, among other things, willfulness, scope, duration, damages, and the amount of any statutory-damages award for that work.

237. With respect to each individual photograph identified in Schedule A, the infringement by Defendants alleged in this action commenced after the effective date of the copyright registration covering that photograph. Plaintiff therefore pleads that the limitations on statutory damages and attorneys' fees set forth in 17 U.S.C. § 412 for infringement commencing before registration do not bar Plaintiff from seeking statutory damages and attorneys' fees for the infringement alleged herein.

238. Defendants' conduct was willful, knowing, deliberate, reckless, or in conscious disregard of Plaintiff's rights.

239. As a direct and proximate result of Defendants' infringement, Plaintiff has suffered and continues to suffer damages and is entitled to recover actual damages, Defendants' profits, statutory damages, enhanced statutory damages for willful infringement, injunctive relief, costs, and attorneys' fees as permitted by law.

## COUNT II – CONTRIBUTORY COPYRIGHT INFRINGEMENT

240. Plaintiff repeats and realleges paragraphs 1 through 226 as if fully set forth herein.

241. Third-party sellers, advertisers, merchants, and/or other platform users directly infringed Plaintiff's registered photographs by uploading, displaying, using, distributing, advertising, and offering products using Plaintiff's photographs without authorization through Alibaba/AliExpress marketplace and advertising systems.

242. Defendants had actual knowledge of, or were willfully blind to, the infringing activity, including through repeated notices, IPP complaints, task numbers, ad-click URLs, screenshots, product IDs, seller/store information, and post-notice evidence.

243. Defendants' involvement was not limited to the continued provision of general-purpose marketplace services. After acquiring specific knowledge of infringement involving Plaintiff's works, Defendants affirmatively advertised, recommended, marketed, promoted, and directed consumers to products and listings using Plaintiff's copyrighted photographs.

244. Defendants materially participated in the infringement through their own advertising, retargeting, recommendation, email-marketing, product-feed, and promotional systems, which increased consumer exposure to infringing products and directed consumers to Alibaba/AliExpress product pages through which those products were commercially exploited.

245. In certain instances, Defendants promoted products, listings, works, and/or sellers after Defendants had already received specific notice concerning the same copyrighted work, seller, listing, and/or substantially identical infringing activity.

246. By affirmatively advertising, recommending, emailing, marketing, and promoting specifically identified infringing activity after receiving notice, Defendants took affirmative steps that encouraged, amplified, and facilitated the continued commercial exploitation of Plaintiff's copyrighted works.

247. Defendants' affirmative promotional conduct, viewed together with their specific knowledge of the infringement, supports a reasonable inference that Defendants intended their promotional and marketplace services to be used to facilitate and continue the infringement alleged herein.

248. As a direct and proximate result of Defendants' contributory infringement, Plaintiff has suffered and continues to suffer damages and is entitled to all remedies available by law.

## COUNT III – VICARIOUS COPYRIGHT INFRINGEMENT

249. Plaintiff repeats and realleges paragraphs 1 through 226 as if fully set forth herein.

250. Third-party sellers, advertisers, merchants, and/or other platform users directly infringed Plaintiff's registered photographs through Alibaba/AliExpress marketplace listings, product pages, advertising placements, product feeds, recommendation placements, email advertisements, and related platform channels.

251. Defendants had the right and ability to supervise or control the infringing activity, including the ability to remove listings, render links invisible, disable access to product pages, suppress product feeds, remove or block ad creatives, restrict or terminate seller accounts, suspend repeat infringers, and implement image-matching or other reupload-prevention measures.

252. Alibaba/AliExpress had the right and practical ability to control the accused conduct, including by disabling listings, suppressing product feeds, disabling advertising creatives, blocking image assets, restricting seller accounts, suspending advertising or recommendation placements, and preventing the further use of known infringing images across Alibaba/AliExpress-controlled marketplace, advertising, recommendation, and email systems.

253. Schedule B shows representative instances in which Defendants processed marketplace takedowns, IPP complaints, seller-related complaints, advertising-channel complaints, and related enforcement requests, including instances in which Defendants

represented that accused links had been rendered invisible or advertising had been stopped. Those documented actions demonstrate Defendants' practical ability to supervise and control the accused conduct through marketplace takedowns, IPP processing, seller discipline, product-feed suppression, ad-channel suppression, recommendation controls, and email-marketing controls.

254. Defendants received a direct financial benefit from the infringing activity, including fees, commissions, advertising revenue, impressions, clicks, conversions, sales-related revenue, seller-related revenue, and increased marketplace traffic and engagement resulting from infringing listings and advertisements.

255. Defendants failed to exercise their supervisory authority to prevent or halt the infringing activity despite knowledge of infringement and the practical ability to act.

256. Defendants' exercise of their promotional, recommendation, advertising, and email-marketing systems with respect to infringing products after receiving notice further demonstrates both Defendants' practical ability to supervise the accused activity and the direct commercial benefit Defendants derived from increasing consumer exposure to and transactions involving those products.

257. As a direct and proximate result of Defendants' vicarious infringement, Plaintiff has suffered and continues to suffer damages and is entitled to all remedies available by law.

## COUNT IV – REMOVAL OR ALTERATION OF COPYRIGHT MANAGEMENT INFORMATION (17 U.S.C. § 1202)

258. Plaintiff repeats and realleges paragraphs 1 through 226 as if fully set forth herein.

259. Plaintiff's copyrighted photographs contained, displayed, or were conveyed in connection with CMI, including Plaintiff's name, copyright ownership information, source attribution, watermarking, and/or identifying authorship information.

260. Defendants, without Plaintiff's authorization, intentionally removed or altered Plaintiff's CMI, or knowingly distributed, imported for distribution, publicly performed, publicly displayed, or otherwise trafficked in copies of Plaintiff's photographs knowing that CMI had been removed or altered without authority.

261. Defendants acted with actual knowledge, or at minimum with reasonable grounds to know, that the removal or alteration of CMI would induce, enable, facilitate, or conceal infringement of Plaintiff's registered photographs.

262. Defendants' conduct violated 17 U.S.C. § 1202(b), including § 1202(b)(1), § 1202(b)(2), and/or § 1202(b)(3).

263. As a direct and proximate result of Defendants' violations of 17 U.S.C. § 1202, Plaintiff has suffered damages and is entitled to recover statutory damages, actual damages, Defendants' profits, injunctive relief, costs, and attorneys' fees as provided by 17 U.S.C. § 1203.

## COUNT V – FALSE DESIGNATION OF ORIGIN / FALSE ASSOCIATION (15 U.S.C. § 1125(a))

264. Plaintiff repeats and realleges paragraphs 1 through 226 as if fully set forth herein.

265. Plaintiff has protectable commercial interests and goodwill in the names Tara Mapes and Tara Mapes Photography, Plaintiff's professional reputation, Plaintiff's source-identifying photographic style, and Plaintiff's watermarking, authorship attribution, and source-identifying visual content.

266. Defendants used Plaintiff's photographs, branding, source-identifying images, attribution, and/or indicia of Plaintiff's identity in commerce in connection with the advertising, promotion, offering for sale, and sale of third-party goods through Alibaba/AliExpress platforms and advertising channels.

267. Defendants' use of Plaintiff's photographs and associated source-identifying material was likely to cause confusion, mistake, or deception as to Plaintiff's sponsorship, approval, affiliation, connection, or association with the advertised goods, sellers, listings, or Alibaba/AliExpress platform uses.

268. Defendants' conduct falsely suggested that Plaintiff authorized, sponsored, approved, or was otherwise associated with the products, sellers, listings, advertisements, or platform uses at issue.

269. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer damages, including loss of control over reputation, loss of goodwill, and commercial injury.

## COUNT VI – FALSE ENDORSEMENT (15 U.S.C. § 1125(a))

270. Plaintiff repeats and realleges paragraphs 1 through 226 as if fully set forth herein.

271. Plaintiff has a protectable interest in her identity, persona, professional reputation, brand, and source-identifying photographs as a professional photographer.

272. Defendants used Plaintiff's identity, brand, source-identifying photographs, watermarking, or authorship-associated visual content in commercial marketplace listings, advertisements, recommendations, and promotional materials.

273. Defendants' use was likely to create the false impression that Plaintiff endorsed, approved, sponsored, licensed, photographed, collaborated on, or was otherwise associated with the accused products, sellers, listings, advertisements, or Alibaba/AliExpress platform uses.

274. Defendants' use falsely implied that Plaintiff was affiliated with, endorsed, sponsored, approved, licensed, or was otherwise connected to the advertised goods, sellers, or Alibaba/AliExpress platform uses.

275. Consumers viewing the accused listings, ads, recommendations, and email placements would reasonably believe that Plaintiff endorsed or was associated with the advertised goods or platform uses.

276. As a direct and proximate result of Defendants' false endorsement, Plaintiff has suffered and continues to suffer damages, including loss of control over her professional reputation and goodwill.

## COUNT VII – NEW YORK COMMON LAW UNFAIR COMPETITION

277. Plaintiff repeats and realleges paragraphs 1 through 226 as if fully set forth herein.

278. Plaintiff has protectable property interests in her copyrighted photographs, brand, professional reputation, goodwill, name, and source-identifying visual content.

279. Defendants engaged in unfair competition under New York common law by misappropriating Plaintiff's photographs, reputation, goodwill, and source-identifying content for commercial advantage in bad faith.

280. Defendants used Plaintiff's photographs and source-identifying content to promote, advertise, recommend, and sell third-party goods through Alibaba/AliExpress marketplace and advertising channels without authorization.

281. Defendants' conduct was undertaken in bad faith, including because Defendants continued to display, host, distribute, promote, advertise, recommend, and monetize Plaintiff's photographs after repeated notice of Plaintiff's rights and objections.

282. As a direct and proximate result of Defendants' unfair competition, Plaintiff has suffered and continues to suffer damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in Plaintiff's favor and against Defendants, jointly and severally, and award the following relief:

A. A preliminary and permanent injunction prohibiting Defendants and their officers, agents, servants, employees, attorneys, subsidiaries, affiliates, sellers, advertisers, and all persons acting in concert with them from infringing Plaintiff's copyrights or using Plaintiff's photographs without authorization;

B. An order requiring Defendants to remove or disable access to all infringing listings, advertisements, cached images, recommendation images, search-result images, product-feed images, seller-uploaded images, email-ad images, ad creatives, and related copies of Plaintiff's works;

C. An order requiring Defendants to implement effective measures to prevent reuploading, relisting, redistribution, re-serving, or reappearance of Plaintiff's photographs, including image-matching, hash-matching, product-feed suppression, ad-creative suppression, seller-upload blocking, repeat-infringer discipline, and other available tools;

D. Actual damages and disgorgement of Defendants' profits pursuant to 17 U.S.C. § 504(b);

E. In the alternative, at Plaintiff's election, statutory damages pursuant to 17 U.S.C. § 504(c) with respect to each individual copyrighted work infringed, including each individual photograph identified in Schedule A that was registered as a separate work through a qualifying group registration of photographs, in an amount of up to $30,000 per work infringed, or up to $150,000 per work infringed for willful infringement;

F. Statutory damages, actual damages, Defendants' profits, costs, and attorneys' fees pursuant to 17 U.S.C. § 1203 for Defendants' violations of 17 U.S.C. § 1202;

G. Plaintiff's costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505 and any other applicable law;

H. Pre-judgment and post-judgment interest to the extent permitted by law;

I. An award of damages, disgorgement of Defendants' profits, corrective relief, and injunctive relief under the Lanham Act, including 15 U.S.C. §§ 1116 and 1117;

J. An award of injunctive and monetary relief under New York common law, including relief for unfair competition and misappropriation;

K. An order requiring Defendants to preserve and produce records relating to the infringements, sellers, product IDs, listings, advertisements, recommendation placements, email placements, IPP complaints, takedown decisions, counter-notices, seller discipline, repeat-infringer review, product feeds, ad feeds, internal communications, impressions, clicks, conversions, revenues, commissions, and profits;

L. An order permitting Plaintiff to supplement Schedule A and Schedule B based on discovery, including additional platform records, seller records, advertising records, product-feed records, recommendation records, email-marketing records, image-storage records, and other records or materials identifying additional infringed photographs, uses, listings, advertisements, sellers, product IDs, ad creatives, and responsible entities; and

M. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

/s/ Michael Jones Dated: September 1, 2026
Michael Jones, Esq.

Jones Intellectual Property
44 Court St #1217,
Brooklyn, NY 11201
718-500-0115
mjones@jonesipl.com

*Attorney for Plaintiff Tara Mapes*